REDACTED

1  Mark A. Romeo (SBN 173007)
      mromeo@crowell.com)
2  Derek S. Hecht (SBN 273039)
      dhecht@crowell.com
3  CROWELL & MORING LLP
   3 Park Plaza, 20th Floor
4  Irvine, CA  92614-8505
   Telephone: 949.263.8400
5  Facsimile: 949.263.8414

6  Attorneys for Plaintiff
   Landmark Health, LLC

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  LANDMARK HEALTH, LLC,                Case No.

13              Plaintiff,               **COMPLAINT FOR: (1) VIOLATION OF
                                         THE DEFEND TRADE SECRETS ACT; (2)
14        v.                             VIOLATION OF THE CALIFORNIA
                                         UNIFORM TRADE SECRET ACT; (3)
15  KUNAL SETHY, an individual and FIRST BREACH OF FIDUCIARY DUTY; (4)
    MILE HEALTH, INC., a Delaware        BREACH OF CONTRACT; (5)
16  Corporation,                         COMPUTER CRIMES IN VIOLATION OF
                                         CALIFORNIA PENAL CODE 502(c); AND
17              Defendants.              (6) UNFAIR COMPETITION**

18                                       **DEMAND FOR JURY TRIAL**

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

COMPLAINT

IRACTIVE-8431241.1

## NATURE OF THE CASE

1.      This is an action based upon: (1) the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*; (2) California's Uniform Trade Secrets Act (Cal. Civ. Code § 3246, *et seq.*); (3) breach of fiduciary duty and duty of loyalty; (4) breach of contract; (5) violation of California Penal Code Section 502(c); and (6) unfair competition (under Cal. Bus. & Prof. Code § 17200, *et seq.*); and Landmark seeks injunctive relief, damages, and all other appropriate relief to stop Defendants' use, disclosure, and misappropriation of Landmark's confidential and trade secret documents and information by, among other things, taking such information from Landmark's secured computer systems and using it to operate a competing business against Landmark.

## THE PARTIES

2.      Plaintiff Landmark Health, LLC (hereinafter "Landmark" or "Plaintiff") is an LLC organized under the laws of Delaware, with its headquarters in Huntington Beach, California.

3.      Defendant Kunal Sethy was and at all relevant times mentioned hereunder an individual residing in the County of San Mateo State of California.  Until September 28, 2018, Defendant Sethy worked for Landmark through its subsidiary, Landmark MSO, LLC, out of its offices located in San Mateo, California.  It is within the County of San Mateo where Landmark is informed and believes the majority of the wrongful conduct occurred.

4.      Defendant First Mile Health, Inc. ("FMH") is a Delaware Corporation, doing business in and around the County of San Mateo, and other parts of the Bay Area.  FMH was incorporated on or about August 10, 2018.

5.      Upon information and belief, the actions and omissions alleged herein to have been undertaken by the Defendants were undertaken by each Defendant individually, were actions and omissions that each Defendant authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions and omissions each Defendant assisted, participated in, or otherwise encouraged, and are actions for which each Defendant is liable. Each Defendant aided and abetted the actions of the Defendants set forth below, had knowledge of those actions and omissions, provided assistance and benefited from those actions and omissions.  Each of the Defendants was the agent of each of the remaining Defendants, and in

doing the things herein alleged, was acting within the course and scope of such agency and with the permission and consent of other Defendants.

6. Third party Slack Technologies, Inc. ("Slack") is a technology company based in the City of San Francisco that offers Internet-related services, including real time communication and document sharing and storage through their "Slack" program. Slack has an agent for service of process at Incorporating Services, LTD, located at Incorporating Services, LTD, 7801 Folsom Boulevard, Suite 202, Sacramento, CA 95826. As described herein, Defendants transmitted and stored Landmark's confidential and trade secret documents and information to their personal email and Slack accounts.

7. Third party Google, Inc. ("Google") is a technology company based in Mountain View, California, that offers Internet-related services, including email services through Gmail, cloud storage, and real-time communication and document sharing through Google Hangouts. Google has an agent for service of process at CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833, and has offices at 1600 Amphitheatre Parkway, Mountain View, California 94043. As described herein, Defendants transmitted and stored Landmark's confidential and trade secret documents and information to their personal email and Google Hangout accounts.

## **JURISDICTION**

8. This Court has original jurisdiction over this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c) and 28 U.S.C. § 1367.

## **VENUE**

9. The conduct alleged herein occurred within the City and County of San Mateo, State of California, and jurisdiction and venue is therefore proper within the Northern District of California.

## **INTRADISTRICT ASSIGNMENT**

10. This is an action for trade secret misappropriation, breach of contract, unfair competition, breach of fiduciary duty and loyalty, where a substantial part of the events or omissions which give rise to the claims have taken place in San Mateo County and where a

substantial part of the property that is the subject of the action is situated in San Mateo County. Thus, pursuant to Civil L.R. 3-2(c) and (e), this action should be assigned to the San Francisco Division.

## LANDMARK AND ITS BUSINESS

11.     Landmark is a healthcare services company with its headquarters in Huntington Beach, California.  Landmark, however, has offices in other parts of the state, including an office in San Mateo County, where it employed Defendant Sethy.  Landmark's mission is to assist health plans in the delivery and management of high-quality and cost-effective care for patients with complex health needs through home-based medical care.  Landmark's community-based, physician-led medical teams specialize in house calls and deliver medical, behavioral, social and palliative care to individuals with multiple chronic conditions wherever they reside, and whenever they need it.  Landmark helps provide an efficient delivery of superior clinical outcomes through the dissemination and adoption of evidence-based medicine.  To achieve these goals, Landmark contracts with affiliated medical groups in fourteen markets across the United States.  Landmark has been extremely successful in achieving these goals, and is responsible for caring for over eighty thousand members across the country.

12.     Landmark creates economic and clinical value by ███████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████.  In each health plan agreement, Landmark and its health plan partner establish a ███████████████████████████████████████ ████████████████████████.  In each subsequent year, Landmark ██████████████ ██████████████████████████████████████████████████████████████████ ████████████████ and Landmark has the potential to ████████████████████████ ██████████████████████████████████████████████████████.  In short, Landmark's entire business model is based on its ██████████████████ ██████████████████████████████████████████████████████████████ █████████████████████████████████████.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    13.    Landmark's customers include ██████████████████████
2    ███████████████████████████████████████████████████████████
3    ███████████████████████████████████████████████████████
4    ████████████████████████████████████████████████████████
5    ████████████████████████████████████████████████████
6    █████████████████████████████████████████████████████
7    ████████████████████████████████████████████████

8    **LANDMARK'S PROPRIETARY AND TRADE SECRET INFORMATION**

9    14.    Landmark was founded after a year of ██████████████████████
10   ██████████████████████████████████████████████████████
11   ████████████████████████████████████████████████████████
12   ███████████████████████████████████████████████████████████
13   ██████  Since that initial contract, Landmark has grown considerably, and now manages over
14   ███████████████████████████████████████████████████████
15   ████████████████████

16   15.    Since its founding in 2013, Landmark has continued to develop an extensive
17   amount of intellectual property, including proprietary and trade secret data.  This proprietary and
18   trade secret information consists of, but is not limited to ██████████████████████████████
19   ████████████████████████████████████████████████████████
20   ████████████████████████████████████████████████████  This
21   proprietary and trade secret information is kept by Landmark in various secured databases.  For
22   example, Landmark uses ████████████████████████████████████████████
23   ████████████████████, including email communications containing sensitive information and
24   attachments, as well as customer/potential customer contact information.  Because of its value,
25   Landmark takes extraordinary steps to protect its confidential and trade secret documents and
26   information.  In this regard, Landmark limits access to sensitive confidential information and
27   trade secrets.  It does so by requiring its employees, such as Defendant Sethy, to sign proprietary
28   information agreements in which they promise to keep Landmark information confidential.  For

example, as a condition of employment, Landmark requires employees to sign the Landmark Non-Disclosure, Non-Solicitation and Developments Agreement ("NDA").  Section 1 of the NDA provides:

> I shall not at any time, whether during or after the termination of my employment: (a) reveal to any Person any Confidential Information (as defined in <u>Schedule 1</u> hereto), except to employees of the Company who need to know such Confidential Information for the purposes of their employment, or as otherwise authorized by the Company in writing; (b) keep, use or attempt to use any Confidential Information except as may be required in the ordinary course of performing my duties as an employee of the Company; or (c) use any Confidential Information for my own benefit or the benefit of others or in any manner that may injure or cause loss or may be calculated to injure or cause loss to any Company Affiliate, whether directly or indirectly.

Section 2 similarly provides:

> Furthermore, I agree that during my employment I shall not make, use or permit to be used any Company Documentation (as defined in <u>Schedule 1</u> hereto), other than for the benefit of the Company.  I further agree that I shall not, after the termination of my employment, use or permit others to use any such Company Documentation, it being agreed that all Company Documentation shall be and remain the sole and exclusive property of the Company.  Immediately upon the termination of my employment I shall deliver all Company Documentation, and all copies thereof, as well as any other tangible property of the Company, including any computer, cell phone or access badge, in my possession to the Company, at its main office.

16.     The NDA also contains provisions prohibiting the disclosure or use of confidential information received from third parties (Section 9) and prohibits an employee from soliciting any Landmark employees or former employees for a period of two years (Section 10).

17.     Defendant Sethy executed the NDA on February 3, 2017, prior to starting his employment with Landmark.  (Exhibit 1 [Kunal Sethy Employment Letter and NDA].)

18.     Landmark also maintains robust computer and internet use policies, which likewise prohibit employees from accessing or transferring confidential information for purposes that would run counter to Landmark's best interests.  For example, Landmark's Acceptable Use of Information Assets Policy ("Use Policy") provides:

> Computer systems, including but not limited to computer hardware, software, operating systems, cell phones, mobile wi-fi devices (MiFi), storage media, electronic mail and files are the property of the Company.  These systems are to be used for business purposes in serving the interest of the Company, customers, business partners, and our members.  The responsible use of computer systems and other-devices is necessary to prevent loss of physical or information assets.  Specific procedures are outlined below to ensure the protection of these assets.

The Use Policy further provides that Landmark's systems are subject to Audit and monitoring (Section 1.6), that systems may not be accessed for unauthorized purposes (Section 2.1), that passwords may not be shared (Section 2.2), that non-employees may not access Landmark computers (Section 2.4), and that employees are prohibited from using Landmark computers for private business activities (Section 4.8).  (Exhibit 2, [Use Policy].)

19.     Landmark also maintains an Email & Messaging Policy ("Email Policy") which applies to all Landmark employees.  The Email Policy requires that all Landmark email accounts be used for company business-related purposes (Section 1.2), and prohibits the use of non-company email accounts for work purposes (Section 2.1).  (Exhibit 3, [Email Policy].)

20.     Indeed, because Landmark also ███████████████████████, it takes great care to ensure the integrity of its systems and security protocols.  Landmark employees are only able to gain access to Landmark's information through password-protected programs and entry points.  Landmark secures access to its facilities and employs other security measures that limit and control access to its confidential information and trade secrets.  Landmark takes security measures to protect its facilities, including locking its doors, activating an alarm system (or being in a building that activates an alarm system) after business hours, and/or utilizing security guards to ensure no unauthorized access to its facilities.  The facilities are closed to the public during normal business hours.  Employees must supply proper credentials to access Landmark facilities, computers and devices.  Landmark employs controls on its computers that prohibit the use of external devices, such as USB drives or "thumb drives" to transfer information off of its systems.

21.     Landmark continuously updates these policies, and maintains the digital and physical security and confidentiality of its information.  Landmark employs computer security personnel to monitor its systems and information.

22.     Landmark derives value from the secret nature of its confidential and trade secret documents and information.  In particular, Landmark's confidential and trade secret strategies, cost and logistical models, contacts, and market analysis go the very core of its business, and are critical to its ability to compete in the marketplace.  The use of these trade secrets by a competitor would inflict irreparable harm on Landmark.

## DEFENDANT SETHY'S DUTIES TO LANDMARK

23.     Landmark hired Defendant Sethy in February 2017 as a VP, General Manager for the San Mateo, California market.  As part of his job duties, Defendant Sethy worked closely with Landmark's customers in Northern California, including ███████████████.  Defendant Sethy was issued and used a company laptop, a company email address, and had access to Landmark's trade secret documents and information, including, but not limited to, ████████ ███████████████████████████████████████████████████ ███████████████████████  In particular, Defendant Sethy, in the course of performing his job duties, received confidential and trade secret documents regarding opportunities in Northern California and Landmark's existing customers in Northern California.

24.     As a condition of his employment, Defendant Sethy executed an NDA on February 3, 2017, in which, as addressed above, he promised not to use or disclose Landmark's confidential information.  As an employee of Landmark's, Defendant Sethy was also subject to Landmark's Use Policy and Email Policy, which contained additional prohibitions against misuse of Landmark's computer and email systems and the disclosure or misuse of Landmark's confidential information.  As an employee of Landmark, Defendant Sethy owed an undivided duty of loyalty to Landmark.

## DEFENDANTS' MISCONDUCT

25.     Unbeknownst to Landmark, from at least July 2018, and while still a Landmark employee, Defendant Sethy began competing against Landmark and misappropriating

CROWELL
& MORING LLP
ATTORNEYS AT LAW

COMPLAINT

1   Landmark's confidential and trade secret information.  He did this primarily by using Landmark's

2   own computer systems, including the Landmark laptop he had been issued and his Landmark

3   email address.  He did so even though these things were being done without the permission of

4   Landmark.

5   26.   As early as July 2, 2018, Defendant Sethy used his Landmark-issued laptop to

6   communicate via email with prospective clients, staff, and investors about his new company,

7   FMH.  For example, on August 21, 2018, Defendant Sethy sent an email to ███████████

8   ██████████████████   In the email, Defendant Sethy explains that he has been ███████

9   ████████████████████████████████████████████████████████████████████

10  ██████

11  27.   Between July 2, 2018 and late-September, 2018, Defendant Sethy repeatedly used

12  his Landmark-issued laptop while not connected to Landmark's IT systems and network, and

13  during such times used his personal Gmail and his FMH email for appointment scheduling, web

14  chat (via Google Hangouts), and Slack collaboration and/or file sharing.  Because he was not

15  connected to Landmark's systems at these times, he was able to evade Landmark's use

16  restrictions and security monitoring.

17  28.   On September 10, 2018, Defendant Sethy used his Landmark-issued laptop to set

18  up a business account on Gmail and a related Slack account.  "Slack" is a third-party real-time

19  communication and document sharing service which Landmark is informed and believes was

20  developed and/or owned by Slack Technologies, Inc.  Both accounts were registered as belonging

21  to FMH, and Defendant Sethy identified himself as the "CEO" and service administrator.

22  29.   As set forth further below, Defendant Sethy forwarded Landmark confidential and

23  proprietary documents to himself from his Landmark email to his personal Gmail account

24  (kunal.sethy@gmail.com) as well as to his FMH email address (kunal@firstmilehealth.org)

25  30.   Throughout early September 2018, Defendant Sethy downloaded bulk information

26  from the Landmark file server and information system.  These documents included highly

27  confidential and proprietary Landmark documents, including but not limited to ███████

28  ████████████████████████████████████████████████████████████████████

CROWELL
& MORING LLP
ATTORNEYS AT LAW

COMPLAINT

1 ██████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████. There was no legitimate business reason for Defendant Sethy to do this, and in

4 conjunction with Defendant Sethy's use of Slack, Google Hangouts, and Gmail, allowed

5 Defendant Sethy to transfer all of this information to his personal possession.   The overwhelming

6 bulk of these downloads occurred on the last two days of Defendant Sethy's employment with

7 Landmark, and coincided with use of Slack and Gmail, strongly indicating that the documents

8 were subsequently transferred off of the Landmark laptop and to systems controlled by

9 Defendants.

10       31.     On September 20, 2018, Defendant Sethy forwarded an email from ██████

11 ██████ originally sent to his Landmark email address to his FMH email.  He then responded to

12 the invitation by offering to meet the week of October 8, 2018 (after his scheduled departure from

13 Landmark).  The email inquired about work Defendant Sethy was doing on Landmark's behalf

14 ████.  Then, just two days later, Defendant Sethy forwarded an email from his Landmark

15 email to his FMH email titled "Notes & Action items from ██████ 09_18_18."  The email

16 contained proprietary analysis and customer information about Landmark's relationship with

17 ████ which would be invaluable to a competitor.

18       32.     On September 27, 2018, Defendant Sethy forwarded an email titled ████████

19 ██████ along with an attachment titled ██████████████████████ to his

20 personal Gmail account from his Landmark account.  The attachment contained highly

21 proprietary ████████████████.  Less than thirty minutes later,

22 Defendant Sethy corresponded with ██████████, and asked her to send a message to

23 his personal Gmail account regarding a requested meeting set for the week of October 8, 2018

24 with ██████.  On September 28, 2018, Defendant Sethy again reached out to ██████ and

25 solicited them for his new business.

26       33.     Also on September 28, 2018, Defendant Sethy forwarded to his personal Gmail

27 account a series of emails which included the attachment

28 "██████████████████████████████ The email was

CROWELL
& MORING LLP
ATTORNEYS AT LAW

originally dated August 13, 2018, and Defendant Sethy had no legitimate business reason to forward this attachment. The attachment contains highly confidential ████████████████ ████████████████████████████████████████████ which would be useful to a competitor attempting to establish a similar relationship.

34.     Defendant Sethy also attempted to use a USB storage device on September 28, 2018, in an apparent attempt to transfer information of his Landmark-issued laptop, but was prevented from doing so by Landmark's security protocols which prevent the transfer of information to USB devices.

35.     On September 28, 2018, Defendant Sethy resigned from Landmark. Shortly thereafter, he officially announced his new business, FMH, although he had been working for the business secretly since at least June 2018 and FMH was incorporated on August 10, 2018, well over a month before Defendant Sethy would resign from Landmark.

36.     After establishing his new business, Defendant Sethy became even more brazen about using Landmark's information and soliciting Landmark's employees.

37.     Shortly after leaving Landmark, Defendant Sethy hosted a private dinner for Landmark's entire San Mateo market team, *except* for managers. On information and belief, Sethy used this meeting to solicit these Landmark employees to work for his new business.

38.     On October 6, 2018, Defendant Sethy sent a PowerPoint presentation to a former Landmark executive, titled "First Mile Health Investor Slide Deck ████" This was part of an effort to solicit the executive to invest in First Mile Health and to request that the executive send him contact information for additional Landmark customers. As set forth above, the Investor Slide Deck was full of Landmark information taken from a Landmark PowerPoint presentation that Defendant Sethy had improperly forwarded to his personal email account. For example, a side-by-side comparison of a graph appearing in the Landmark deck and a graph appearing in the FMH deck shows that the FMH graph is identical to the Landmark graph:

/ / /

/ / /

/ / /

39.     Notably, the slide deck claims that FMH has completed a six-month pilot program, which allegedly showed that FMH had significant benefits for its users.  In other words, FMH had either been in operation since on or about April 2018, meaning that Defendant Sethy was directly competing against Landmark while still a Landmark employee for months (and while hiding this from Landmark), or Defendants had no actual pilot program and were instead using Landmark's information to fake having performed such a program.

40.     These actions show that Defendant Sethy engaged in a persistent campaign to misappropriate Landmark's confidential information and trade secrets, and to use his position as a Landmark employee to undermine Landmark and steal its customers out from under it.  Further, they show that FMH has been making use of the information Defendant Sethy took from Landmark to compete against Landmark, all while Defendant Sethy continues to breach his contractual obligations to Landmark by soliciting its employees and using its confidential information.

41.     These actions have not only inflicted harm on Landmark, but threaten to inflict additional and irreparable harm against Landmark.  The risk of harm results directly from Defendants' misconduct.  FMH is able to unfairly compete and undermine Landmark with its customers by using the confidential information taken by Defendant Sethy (doing much of this

while he was still employed and being paid a salary by Landmark).  FMH would not be able to compete at all without using Landmark's information.  Defendants also continue to disrupt Landmark by soliciting their employees.

42.     Moreover, the majority of the bad acts as set forth herein were done by Defendant Sethy while he was still being paid to work for and further the bests interests of Landmark, yet each of the actions were done by Defendant Sethy completely outside the scope of his employment at Landmark.  Indeed, these things were done to further Defendant Sethy's personal interests and the interests of Defendant FMH, and in complete disregard to the fact that this course of conduct undermined the best interests of Landmark.

43.     Upon information and belief, Defendants have received material benefits from their misappropriation of Landmark's confidential and trade secret documents and information.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

Trade Secret Misappropriation Under the Defend Trade Secrets Act

Against All Defendants

(18 U.S.C. § 1836 *et seq.*)

44.     Landmark realleges and incorporates by reference each and every allegation set forth in paragraphs 1-43 above.

45.     Landmark owns and possesses certain confidential and trade secret documents and information as alleged above.

46.     Landmark's confidential and trade secret information relates to services offered and sold in interstate or foreign commerce.

47.     Landmark's confidential and trade secret information is highly valuable and Landmark will suffer irreparable harm from the use and disclosure of its information.

48.     Landmark has taken reasonable steps to protect the secrecy of its confidential and trade secret documents and information, including by having employees sign an NDA and by instituting and enforcing the Use Policy and the Email Policy.

49. Defendants have misappropriated Landmark's confidential information in the improper and unlawful manner described herein, including by transferring Landmark's information off of its secured systems and to Defendants' personal computers and by using that information to compete against Landmark.

50. Defendant Sethy failed to return Landmark's information at the end of his employment with Landmark, in violation of his NDA with Landmark.

51. On information and belief, Defendants will continue to misappropriate, disclose, and use for their benefit and Landmark's detriment Landmark's confidential information, unless they are enjoined from doing so.

52. Because Landmark's remedy at law is inadequate, Landmark seeks – in addition to damages --- a temporary injunction and a permanent injunction to protect Landmark's confidential and trade secret information and Landmark's legitimate business interests. Landmark will continue to suffer irreparable harm absent injunctive relief.

53. Defendants' misappropriation of Landmark's confidential and trade secret information has caused and will continue to cause Landmark substantial injury, including but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets. Defendants have been unjustly enriched by their misappropriation of Defendants' confidential information and trade secrets.

54. Defendants' misappropriation of Landmark's confidential information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

**SECOND CLAIM FOR RELIEF**

Trade Secret Misappropriation Under California's Uniform Trade Secret Act

Against All Defendants

(Cal. Civ. Code § 3426 *et seq.*)

55. Landmark realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 54 above.

56. Landmark owns and possesses certain confidential and trade secret documents and information as alleged above.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

COMPLAINT

57.     Landmark's confidential and trade secret information relates to services offered and sold in interstate or foreign commerce.

58.     Landmark's confidential and trade secret information is highly valuable and Landmark will suffer irreparable harm from the

59.     Landmark has taken reasonable steps to protect the secrecy of its confidential and trade secret documents and information, including by having employees sign an NDA and by instituting and enforcing the Use Policy and the Email Policy.

60.     Defendants have misappropriated Landmark's confidential information in the improper and unlawful manner described herein, including by transferring Landmark's information off of its secured systems and to Defendants' personal computers and by using that information to compete against Landmark.

61.     Defendant Sethy failed to return Landmark's information at the end of his employment with Landmark, in violation of his NDA with Landmark.

62.     On information and belief, Defendants will continue to misappropriate, disclose, and use for their benefit and Landmark's detriment Landmark's confidential information, unless they are enjoined from doing so.

63.     Because Landmark's remedy at law is inadequate, Landmark seeks – in addition to damages --- a temporary injunction and a permanent injunction to protect Landmark's confidential and trade secret information and Landmark's legitimate business interests. Landmark will continue to suffer irreparable harm absent injunctive relief.

64.     Defendants' misappropriation of Landmark's confidential and trade secret information has caused and will continue to cause Landmark substantial injury, including but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets.  Defendants have been unjustly enriched by their misappropriation of Defendants' confidential information and trade secrets.

65.     Defendants' misappropriation of Landmark's confidential information was intentional, knowing, willful, malicious, fraudulent, and oppressive, within the meaning of California Civil Code, Section 3294.  Defendants misappropriated Landmark's confidential and

trade secret information intentionally and knowingly and with a deliberate intent to benefit themselves and to injure Landmark.  Landmark is entitled to its damages, in an amount to be determined at trial, as well as injunctive relief, and an award of punitive and/or treble damages and attorney's fees pursuant to California Civil Code, Sections 3426.3(c) and 3426.4.

### THIRD CLAIM FOR RELIEF

Breach of Fiduciary Duty and Duty of Loyalty

Against Defendant Sethy

66.     Landmark realleges and incorporates by reference each and every allegation set forth in paragraphs 1-65 above.

67.      As an employee of Landmark, Defendant Sethy owed Landmark a duty of loyalty and was obligated to act with the utmost good faith, and in the best interest of Landmark.

68.     Landmark was entitled to place its trust and confidence in Defendant Sethy and was entitled to expect Defendants to act with the utmost good faith toward it in carrying out the employment and the business of Landmark.

69.     Landmark relied on Defendant Sethy's loyalty and integrity and faithful performance of his job duties and responsibilities.

70.     Defendant took advantage of Landmark's faith in him—thereby breaching his fiduciary duties – by failing to perform his duties to Landmark, by acting in conflict of interest, by engaging in activities for his own benefit and to the detriment of Landmark, and by taking Landmark's confidential and trade secret information and using it to operate a competing business against Landmark.

71.     Defendant Sethy knowingly and willingly breached his duty of loyalty to Landmark by misappropriating Landmark's confidential and trade secret documents and information, and engaging in acts that undermine Landmark and its relationships with its customers.

72.     Defendant Sethy acted in a manner inconsistent with his agency and trust by misappropriating Landmark's confidential and trade secret documents and information to the

CROWELL
& MORING LLP
ATTORNEYS AT LAW

injury of Landmark and for his own benefit and the benefit of Defendants, and by acting against Landmark's interests while and after being employed by Landmark.

73. As a direct and proximate result of Defendant Sethy's disloyalty to Landmark and breach of his duties, Landmark has been and is being harmed, and faces irreparable injury.

74. Landmark is entitled to damages, in an amount to be determined at trial, as well as disgorgement by Defendant Sethy of all profits he received as a result of his disloyalty, in an amount to be determined at trial. Landmark is further entitled to injunctive relief against Defendant Sethy and those acting in concert with him, to remedy his past improper conduct and prevent such conduct in the future, including the seizure and return of all of Landmark's information and the destruction of materials created by Defendants by using Landmark's information.

75. The above-recited actions of Defendants were done with malice, fraud, oppression, and reckless disregard of the above described rights of Landmark and within the meaning of California Civil Code § 3294. Therefore, Landmark is entitled to recover punitive damages against Defendants.

## FOURTH CAUSE OF ACTION

Breach of Contract

Against Defendant Sethy

76. Landmark realleges and incorporates by reference each and every allegation set forth in paragraphs 1-75 above.

77. As a condition of his employment with Landmark, on February 3, 2017, Defendant Sethy signed an NDA with Landmark (Exhibit 1.)

78. Defendant Sethy breached Section 1 of the NDA by taking, disclosing, and using Landmark's confidential information.

79. Defendant Sethy breached Section 2 of the NDA by retaining Landmark's confidential information after his employment with Landmark ended, and by continuing to use that information in his competing business.

80.     Defendant Sethy breached Section 10 of the NDA by soliciting Landmark's employees and former employees to work for his new company, First Mile Health, during and after his employment with Landmark, and violated Section 11 of the NDA by soliciting Landmark's customers while still a Landmark employee.

81.     Defendant's performance of these contractually provisions was not excused, and Landmark had performed all its duties under the NDA.

82.     As a direct and proximate result of Defendant Sethy's breaches, Landmark has suffered damage, in an amount to be proven at trial.  Further, Landmark will continue to be directly and proximately damages and irreparably harmed if Defendant Sethy is not enjoined from further violation of his contractual obligations to Landmark, and directed to comply therewith, and prohibited from using and disclosing Landmark's confidential and trade secret information. Landmark does not have an adequate remedy at law, and will not be fully compensated for Defendant's breaches without injunctive relief.

**FIFTH CLAIM FOR RELIEF**

Computer Crimes in Violation of California Penal Code § 502(c)

Against Defendant Sethy

83.     Landmark realleges and incorporates by reference each and every allegation set forth in paragraphs 1-82 above.

84.     The acts described above, including the knowing and unauthorized access and transfer of information from Landmark's databases and systems by Defendant Sethy, constitute a violation of California Penal Code, Section 502, which imposes liability on one who:

- Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data;

- Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to

1     a computer, computer system, or computer network;

2     • Knowingly and without permission uses or causes to be used computer services;

3     • Knowingly accesses and without permission adds, alters, damages, deletes, or

4     destroys any data, computer software, or computer programs which reside or exist

5     internal or external to a computer, computer system, or computer network;

6     • Knowingly and without permission provides or assists in providing a means of

7     accessing a computer, computer system, or computer network in violation of this

8     section;

9     • Knowingly and without permission accesses or causes to be accessed any

10    computer, computer system, or computer network; or

11    • Knowingly introduces any computer contaminant into any computer, computer

12    system, or computer network.

13    85.    None of Defendant Sethy's actions fall within the so-called scope of employment

14    exception, which is set forth in Section 502(c)(h).  Indeed, here, Defendant Sethy were acting

15    solely for his and the benefit of FMH, his new employer, and against the best interests of

16    Landmark, when he violated 502(c).  Specifically, these Defendants systematically engaged in

17    copying, downloading, and then transmitting data to their personal accounts in order to run their

18    competing business, and were against the best interests of Landmark.

19    86.    As a consequence, Defendants have been unjustly enriched, Landmark has been

20    harmed and Landmark has sustained damages in an amount to be proven at trial.  On information

21    and belief, Defendants' acts and conduct that constitute the commission of these computer crimes

22    were carried out willfully, fraudulently, maliciously and with a wanton disregard of Landmark's

23    rights, thereby entitling Landmark to punitive damages to be proven at trial.

24    87.    Landmark also has suffered irreparable harm as a result of Defendants' activities

25    and will continue to suffer irreparable injury that cannot be adequately remedied at law unless

26    Defendants, and their officers, agents and employees, and all other persons acting in concert with

27    them, are enjoined from engaging in any further such acts.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIXTH CLAIM FOR RELIEF**

Unfair Competition Cal. Bus. & Prof. Code §§ 17200, *et seq.*

Against All Defendants

88.     Landmark realleges and incorporates by reference each and every allegation set forth in paragraphs 1-87 above.

89.     By violating their contractual obligations and violating Section 502(c) of the California Penal Code, Defendants have competed unfairly.  Through their actions, as detailed in this Complaint, Defendants have compromised the confidentiality of Landmark's trade secrets, undermined Landmark's competitive advantage in the market place, and has caused Landmark to incur costs and damages.  Defendants have likewise compromised Landmark's opportunity to benefit from its ingenuity and efforts as embodied in its confidential and trade secret documents and information.

90.     As a direct and proximate result of Defendants' unfair competition in violation of Business and Professions Code, Sections 17200 *et seq.*, Landmark has suffered and will continue to suffer great and irreparable harm, in an amount to be proved at trial.  Defendants are likely to commit further violations of Business and Professions Code, Sections 17200 *et seq*, and unless restrained and enjoined, will do so, all to Landmark's irreparable damage.  Landmark's remedy at law is not sufficient to adequately compensate Landmark for the harm Defendants have inflicted and threatened.  Accordingly, Landmark seeks preliminary and permanent injunctive relief pursuant to, *inter alia*, Business and Professions Code, Section 17203.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Landmark prays for judgment in its favor and against Defendants, as follows:

1.     For compensatory damages, according to proof;

2.     For exemplary and punitive damages, including damages and/or a reasonable royalty awardable under the UTSA Section 3426.3, according to proof;

3.     For injunctive relief;

4.     For restitution and/or disgorgement of profits;

5.   For attorney fees under Penal Code Section 502(c)(e)(2) and pursuant to Cal. Civ. Code Section 3426.4;

6.   For costs of suit incurred herein; and

7.   For such other and further relief as the Court may deem proper.

DATED:  November 14, 2018          CROWELL & MORING LLP


By:  */s/ Mark A. Romeo*
     Mark A. Romeo

     Attorneys for Plaintiff
     Landmark Health, LLC

1

## **DEMAND FOR JURY**

2          Plaintiff Landmark Health, LLC hereby demands a jury trial as provided by Rule 38(a) of

3   the Federal Rules of Civil Procedure.

4   DATED:  November 14, 2018              CROWELL & MORING LLP

5

6                                          By:  */s/ Mark A. Romeo*

7                                               Mark A. Romeo

8                                          Attorneys for Plaintiff
                                            Landmark Health, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Crowell
& Moring LLP
Attorneys At Law

-21-                                      COMPLAINT

IRACTIVE-8431241.1